[Crim. No. 954.  Second Appellate District, Division Two.—June 29, 1923.]

## THE PEOPLE, Respondent, v. SALVADOR MENDIVAL, Appellant.

[1] CRIMINAL LAW—ROBBERY—EVIDENCE—VERDICT.—In this prosecution for the robbery of a bank, although defendant was not identified as one of those who actually entered the bank, the evidence was sufficient to warrant the inference of defendant's participation in the crime and to sustain the jury's verdict of conviction.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frederick W. Houser, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Theo. Gottsdanker for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

SHENK, J., *pro tem.*—Appellant and his codefendants, Broulio Galindo, Jose Hernandez, and Faustino Rivera, were jointly charged with the robbery of the First National Bank of Arcadia on the fifth day of April, 1922.  Appellant, Galindo, and Hernandez were convicted and sentenced. Rivera was in the hospital at the time of the trial and so far as the record shows his case is undisposed of.  Appellant alone has appealed from the judgment and from the order denying his motion for a new trial.

[1]  The sole contention is that the evidence was insufficient to sustain the verdict in that there is no evidence, so it is claimed, tending in any way to connect the appellant with the commission of the crime.  No authorities are cited in appellant's brief.  It contains a short summary of the evidence, with the suggestion that in order to determine the question raised it will be necessary to consider the evidence

1. Nature and elements of crime of robbery, note, 135 Am. St. Rep. 474.

in its entirety and the request is made that this court read the transcript for that purpose. That has been done.

About 7:30 o'clock on the morning of the day of the robbery the defendant and his codefendant, Galindo, went to the auto livery station of Parsons Brothers in Los Angeles and rented a Ford car without a driver. Appellant signed the receipt and rental agreement in which it was specified that the car was to be returned before midnight of the same day. To this receipt and agreement appellant signed the name of Joe Rivas, an assumed name.

A few minutes before 1 o'clock on the afternoon of the same day a Chevrolet touring car stopped in front of the bank. Three men got out of the car and entered the bank unmasked. They were plentifully supplied with firearms. Two of the men had two revolvers each and the third man had one. At the points of these guns the president, cashier, and two bookkeepers were ordered first to put up their hands and then to lie down on the floor. Presently a customer entered the bank. He, too, was required to join the officers and employees on the floor. While one of the trio kept watch over the victims the other two proceeded to pack into two canvas bags about $2,800 in currency and silver, $3,720 in bonds, and $2,700 in travelers' checks. When the packing was concluded all persons reclining upon the floor were required to enter the vault.

The trio left the bank with the loot and boarded the waiting Chevrolet car, which departed speedily on the highway toward the south. Galindo and Hernandez were positively identified by several witnesses at the trial as two of the men who entered the bank. Rivera was positively identified at the preliminary examination as the third man. While these three were in the bank a fourth man, whom the prosecution claimed and the jury found to be the appellant, remained in the Chevrolet car, sitting under the steering wheel and keeping the motor running. No witness at or in the vicinity of the bank positively identified the fourth man as Mendival. Several saw the form of a man in the front seat of the car. A telephone man who was in an office across the street testified that the man who remained in the car wore a light hat pulled down over the side of his face. Other witnesses testified that the man who remained in the car wore a light grey cap. One witness stated that the com-

plexion of the man in the car resembled the complexion of the appellant as he saw him at the trial.

A rancher testified that shortly after 1 o'clock on the same afternoon he was about three miles southeast of the bank; that he saw the Chevrolet car with four men in it speeding along the Azusa road at about thirty-five miles per hour; that he recognized the defendant Galindo as one of the occupants; that the car was proceeding in an easterly direction toward the Sawpit Wash; that the car struck the wash with such force that it almost overturned; that at about the time he saw the car disappearing in the wash he heard a whistle blowing which he recognized as the police alarm whistle of the city of Monrovia, a city adjoining Arcadia on the east, and that his suspicions were aroused; that he went to Monrovia and notified the police authorities as to what he had seen; that in the company of an officer he went in the direction in which the Chevrolet car was traveling and found it in a lonely spot on Chicago Park Island in the San Gabriel River; that there was no one in the car and that the radiator was hot; that the car was started and driven without difficulty; that the license number plates had been removed and that there were fresh tracks of another automobile near the place where the Chevrolet car had been abandoned. Pieces of paper, such as are used in wrapping coins with the denomination of the coins stamped thereon, were found strewn on the floor in the rear of the car.

An automobile salesman testified that he was the owner of this Chevrolet car and that it had been stolen from his garage some time during the night before the robbery.

A motorcycle officer testified that about 2 o'clock of the same day he arrested the four defendants for speeding in Monterey Park, a few miles westerly from the island in the San Gabriel River; that they were riding in the Ford car rented that morning from Parsons Brothers and were the only occupants of the car; that he gave them the usual ticket requiring them to report and permitted them to go on; that they proceeded toward Los Angeles and that the appellant was driving the car.

The robbery was immediately reported to the office of the sheriff of Los Angeles County. Two deputy sheriffs and the constable of Azusa township, who happened to be at the sheriff's office, started in automobiles for the San Gabriel

Valley, wherein Arcadia is situated. As they were proceed-
ing through Coyote Pass, about midway between San Gabriel
Valley and Los Angeles, they stopped this same Ford car
which was speeding toward Los Angeles and placed the four
defendants under arrest. The appellant was driving the car.

Five revolvers were taken from the four defendants.
Some of these revolvers were identified by the officers of the
bank as those used in the robbery. One revolver was taken
from the person of the appellant. All of the defendants
were wearing caps. Two dark-colored hats and several
articles of clothing were found on the floor of the car. These
hats were identified as those worn by two of the defendants
when they entered the bank. Two empty canvas bags re-
sembling in appearance those used as containers for the
stolen property were also found, one on the person of
Galindo and the other in the rear of the car. The defend-
ants were taken back to the bank that afternoon for the
purpose of identification. The three who entered the bank
were positively identified by the victims, but they could not
identify the appellant because, as they stated, he did not
come into the bank and they did not obtain a sufficient view
of him to be able positively to identify him.

The cashier of the bank testified that a few silver dollars
were found on the floor of the Ford car when it was exam-
ined at the bank after the return of the defendants with the
officers.

When questioned by officers as to what he was doing
with the Ford car appellant stated that they had rented it
for the purpose of going to San Gabriel for some oranges
and that they had taken the guns along to shoot rabbits.

The defendant Galindo was the only one of the defendants
who testified. He denied any and all participation in the
robbery. The only other defense offered was an alibi on be-
half of Galindo and evidence of previous good character on
behalf of appellant.

From the foregoing facts and circumstances the jury un-
doubtedly concluded that the stolen Chevrolet car was em-
ployed by the defendants, including appellant, as a means
of thwarting any successful investigation which might follow
the recovery and identification of that car. The jury must
also have concluded that the use of the Ford car was a ruse
also to prevent identification. The evidence justifies these

conclusions. It was undisputed that the appellant rented the Ford car under a fictitious name a few hours before the robbery. It was also undisputed that he was driving that car when he and his codefendants were arrested for speeding at Monterey Park and when they were again arrested by the officers in Coyote Pass. With the appellant were the three men positively identified. Five guns were found in the party, corresponding to the number used in robbing the bank, and one of these guns was taken from the person of the appellant. Hats used in the commission of the crime and later undoubtedly discarded for caps to avoid identification were found in the car. Canvas bags resembling those used for carrying away the loot were also found in the car. The fact that silver dollars were also found on the floor of the car after the arrest is a very significant circumstance tending to connect the use of the Ford car with the cleverly conceived plan to avoid apprehension.

It is entirely reasonable to conclude that the appellant had knowledge of and took part in the commission of the robbery especially in view of the fact that he had rented and taken the Ford car to the San Gabriel Valley in company with Galindo, whose participation in the robbery has been adjudicated; that when arrested for speeding and later by the deputy sheriffs he had with him not only Galindo but also Hernandez, whose part in the crime likewise has been adjudicated, and also Rivera whose identity as a participant was established; that incriminating evidence was found in the car and that the appellant at the time of the arrest was driving the car with its guilty occupants toward Los Angeles at high speed with the obvious purpose of escape.

Appellant's participation in the crime satisfactorily appears from the facts shown in evidence and the inferences which it was the province of the jury to draw therefrom. (Sec. 1958, Code Civ. Proc.; *People* v. *Messersmith,* 61 Cal. 246.)

The judgment and order are affirmed.

Finlayson, P. J., and Craig, J., concurred.